UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| METABANK, doing business as Meta Payment Systems,<br><br>    Plaintiff,<br><br>    vs.<br><br>CONDUENT BUSINESS SERVICES, LLC, formerly known as Xerox Business Services, LLC,<br><br>    Defendant. | 4:19-CV-04138-KES<br><br><br>ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE AND DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL |

Plaintiff, MetaBank, doing business as Meta Payment Systems, filed this action against Conduent Business Services, LLC, formerly known as Xerox Business Services, LLC, alleging breach of contract and seeking declaratory judgment.[1] Docket 1. Conduent moves to dismiss or transfer venue to the Northern District of Texas. Docket 5. MetaBank opposes the motion. Docket 9. MetaBank filed a motion to compel discovery. Docket 16. Conduent opposes the motion to compel. Docket 19. For the reasons below, the court grants Conduent's motion to dismiss and denies as moot MetaBank's motion to compel.

---

[1] While Conduent is the party named in this lawsuit, the court refers to the defendant as Xerox Business Services in discussion of the facts and law to remain consistent with the contracts at issue and the parties' briefs.

## FACTS

MetaBank is a federally chartered savings bank with its principal place of business in Sioux Falls, South Dakota. Docket 1 ¶ 1. Conduent Business Services, formerly Xerox Business Services, is a Delaware limited liability company with offices in Kentucky. *Id.* ¶ 2. Conduent wholly owns Xerox Card Services. *Id.* ¶ 6. MetaBank and Xerox Card Services entered into a servicing agreement on April 7, 2016. *Id.* ¶ 7; *see* Docket 6-1. Under the servicing agreement, MetaBank agreed to act as the issuing bank for prepaid credit card programs managed, marketed, promoted, and serviced by Xerox Card Services. Docket 1 ¶ 8. Xerox Card Services owes monthly fees to MetaBank for the duration of the servicing agreement. *Id.* ¶ 9. The fees vary depending on prepaid card transaction volumes, with minimum fees ranging from $50,000 to $100,000 per month. *Id.*

The servicing agreement contains a choice of law clause that states that any issues not preempted by federal law are governed by the laws of the State of South Dakota. Docket 6-1 at 48. The servicing agreement also provides that "[f]or actions brought by either party, the venue shall be in the State of Texas." *Id.*

On April 7, 2016, the same date that Xerox Card Services and MetaBank executed the servicing agreement, MetaBank and Xerox Business Services, the parent company of Xerox Card Services, executed a guaranty agreement. Docket 1 ¶ 16; *see* Docket 6-2. Under the guaranty, Xerox Business Services unconditionally and irrevocably guaranteed Xerox Card Services' performance

of all its obligations under the servicing agreement. Docket 1 ¶ 17. The guaranty provides that "[MetaBank] need not take any action against [Xerox Card Services] . . . before proceeding against [Xerox Business Services]." Docket 6-2 at 2. The guaranty also states that "the execution and delivery of [the guaranty] by [Xerox Business Services] [was] a material inducement to MetaBank to enter into the [servicing agreement]." *Id.* at 1.

The guaranty contains a choice-of-law clause stating that it "shall be construed in accordance with and governed by the laws of the state of New York, without regard to conflict of laws provisions thereof." Docket 6-2 at 2. The guaranty does not contain a forum selection clause. *See id.*

Xerox Card Services made a business decision not to launch the prepaid card programs outlined in the servicing agreement. Docket 1 ¶ 10. MetaBank alleges that it performed under the contract. *Id.* Xerox Card Services paid MetaBank the required monthly minimum through February 2019 but ceased payment from March 2019 on. *Id.* ¶¶ 11-12. Xerox Card Services stated it does not intend to pay fees currently outstanding or any fees in the future. *Id.* ¶ 13. According to MetaBank, Xerox Business Services owes it approximately $3.9 million under the guaranty. *Id.* ¶ 24.

MetaBank provided notice to Xerox Business Services that it intended to pursue remedies against Xerox Business Services under the guaranty. *Id.* ¶ 21. MetaBank commenced suit against Xerox Business Services under the guaranty in the District of South Dakota. *Id.* ¶ 26; *see* Docket 1.

## DISCUSSION

Xerox Business Services argues that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) under the doctrine of forum non conveniens, or alternatively, transferred to the Northern District of Texas, Dallas Division, under 28 U.S.C. § 1404(a). Docket 5. Xerox Business Services argues that the servicing agreement and guaranty should be read together and that the forum selection clause in the servicing agreement applies to suits under the guaranty. Docket 6 at 3-8. Metabank contends that the two contracts are separate and the forum selection clause in the servicing agreement does not apply to this suit under the guaranty. Docket 9 at 2.

**I.      Whether the Servicing Agreement's Forum Selection Clause Applies to Suits under the Guaranty**

"A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). South Dakota is the forum state and its choice-of-law rules are applied. *See Allianz Ins. Co. of Can. v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Kamrath*, 475 F.3d at 924.

Under the guaranty, New York law would apply. Docket 6-2 at 2. Under the servicing agreement, South Dakota law would apply. Docket 6-1 at 48. MetaBank asserts that New York law applies per the guaranty's choice of law provision, and that under New York law, the two contracts should be read

4

separately. Docket 9 at 2 n.1. Xerox Business Services argues that no conflict exists because the guaranty and servicing agreement should be read together under both New York and South Dakota law. Docket 14 at 3. Thus, the court first looks to whether the two contracts would be read together under South Dakota and New York law to determine whether a conflict exists.

A.   **South Dakota Law**

In South Dakota, "[a]ll writings that are executed together as part of a single transaction are to be interpreted together." *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D. 1990). "Generally, when two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as one contract." *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442, 444 (S.D. 1983). "[I]t is not critical whether the documents were executed at exactly the same time or whether the parties to each agreement were identical." *Baker*, 456 N.W.2d at 306. "Where several writings are connected by internal references to each other, even if they . . . were not among all of the same parties, they will constitute a single contract as long as they involve the same subject matter and prove to be parts of an entire transaction." *Id.* (internal quotation omitted).

South Dakota courts consider numerous factors in determining whether two contracts must be interpreted together, including whether one contract was an inducement for a party to enter the other. *See Kramer v. William F. Murphy Self-Declaration of Trust*, 816 N.W.2d 813, 815 (S.D. 2012) ("[H]inging

5

one contract upon the execution of another contract . . . heightens the need for joint interpretation." (alteration in original) (quoting *Dakota Gasification Co. v. Nat. Gas Pipeline Co. of Am.*, 964 F.2d 732, 735 (8th Cir. 1992))); *Baker*, 456 N.W.2d at 306 (considering a party's attorney's testimony that his clients would not have entered one contract if a corresponding partnership dissolution agreement was not completed in finding that the two agreements should be read together). Courts also consider whether contracts were executed on the same day and whether one contract references another. *See Kramer*, 816 N.W.2d at 815-16. Such factors evince whether two contracts " 'represent successive steps' " in the same transaction and thus, whether the parties intended them to be read as one. *Id.* at 816 (quoting *Dakota Gasification Co.*, 964 F.2d at 734-35).

When two contracts are read together, a forum selection clause in one contract will apply to suits under the other contract when the second contract does not contain a forum selection clause. *See id.* at 816-17 (finding that a forum selection clause in a promissory note and balloon note governed suits under a disbursement agreement, because the agreements were to be read together); *see also Dakota Gasification Co.*, 964 F.2d at 736 (interpreting North Dakota law to apply a forum selection clause in an affiliates agreement to suits under a guaranty agreement executed as part of the same transaction).

Here, the guaranty and service agreement were both executed on April 7, 2016. Docket 1 ¶¶ 7, 16; *see* Docket 6-1, Docket 6-2. The servicing agreement states that it is governed by the law of South Dakota on all matters not

preempted by federal law. Docket 6-1 at 48. The guaranty is governed by New York law. Docket 6-2 at 2. And the guaranty states that "the execution and delivery of [the guaranty] by [Xerox Business Services] [was] a material inducement to MetaBank to enter into the [servicing agreement]." Docket 6-2 at 1. The guaranty also states that "[MetaBank] entered into the Contract with [Xerox Card Services] in reliance upon" the guaranty. *Id.* It further states that "it is expressly understood and agreed that all conditions, limitations, exclusions, adjustments, and remedies applicable to [Xerox Card Services'] obligations with respect to the [servicing agreement], shall likewise be applicable to any determination of any obligations of [Xerox Business Services] under" the guaranty. *Id.* The servicing agreement was signed by Brian Walsh in his capacity as Executive Vice President and CEO of Xerox Card Services. Docket 6-1 at 52. The guaranty was signed by Brian Walsh in his capacity as Chief Financial Officer of Xerox Card Services. Docket 6-2 at 3.

      Like the contracts at issue in *Kramer*, the guaranty was an inducement for the parties to enter into the servicing agreement. *See Kramer*, 816 N.W.2d at 816-17. The contracts were executed on the same day, like those in *Kramer*. *Id.* at 815. And, like the contracts in *Kramer*, the guaranty references the servicing agreement. *Id.* at 816. While the parties are not identical, Brian Walsh signed both agreements on behalf of Xerox Card Services and its parent company, Xerox Business Services. Docket 6-1 at 52; Docket 6-2 at 3. The guaranty has no meaning outside the context of the servicing agreement, and the parties would not have entered into the servicing agreement absent the

guaranty. This shows that the two contracts " 'represent successive steps' " in the same transaction and thus, that the parties intended them to be read as one. *Kramer*, 816 N.W.2d at 816 (quoting *Dakota Gasification Co.*, 964 F.2d at 734-35). Thus, the two contracts should be read together under South Dakota law. Like the contracts in *Kramer*, the forum selection clause in the servicing agreement should apply to suits under the guaranty. Under South Dakota law, the forum selection clause in the servicing agreement would apply to this suit that was initiated under the guaranty.

**B.    New York Law**

Under New York law, "generally, documents executed at about the same time and covering the same subject matter are to be interpreted together, even if one does not incorporate the terms of the other by reference . . . ." *Oak Rock Fin., LLC v. Rodriguez*, 50 N.Y.S.3d 108, 111 (N.Y. App. Div. 2017) (internal quotation omitted); *see also Nau v. Vulcan Rail & Const. Co.*, 36 N.E.2d 106, 110 (N.Y. 1941) (where three contracts were executed at substantially the same time, relating to the same subject matter, and referenced one another, the contracts were to be read together as one).

While the parties do not point to, and the court cannot identify, any rulings of New York's highest state court addressing the issue, New York state courts of appeals and federal courts interpreting New York law have found that where a guaranty does not contain a forum selection clause, but the underlying agreement does, the underlying agreement's forum selection clause applies to suits under the guaranty. *See Ameritrust Co. Nat'l Ass'n v. Chanslor*, 803 F.

8

Supp. 893, 896 (S.D.N.Y. 1992) (applying a forum selection clause in an underlying contract to suits under a guaranty because "under the law of New York, 'where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together.'" (quoting *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 927 (E.D.N.Y. 1985))); *Faberge USA, Inc. v. Ceramic Glaze, Inc.*, 1998 WL 31853, *3 (S.D.N.Y. Mar. 28, 1988) ("[T]he guarantee not only specifically guarantees the full performance of all terms of the contract—forum selection not excluded—but also expressly states that the guarantee itself is an inducement . . . As a guarantor of an agreement containing a New York choice of forum clause, [defendant] is subject to this forum as well."); *Oak Rock Fin.*, 50 N.Y.S.3d at 110-11 (guarantor was bound by New York forum selection clause in loan agreement, even though guaranty did not reference loan agreement or contain a New York forum selection clause and the underlying loan agreement was executed by plaintiff and a third-party because they were executed close in time and related to the same subject matter); *Brax Capital Group, LLC v. WinWin Gaming, Inc.*, 922 N.Y.S.2d 43, 44 (N.Y. App. Div. 2011) (upholding personal jurisdiction over a defendant in a suit under a guaranty based in part on a forum selection clause underlying the guaranty, even though the guaranty itself had no forum selection clause because the two contracts were "executed at about the same time and covering the same subject matter").

MetaBank relies on *National Union Fire Insurance Co. v. Robert Christopher Associates* to assert that New York law considers a guaranty to be distinct from the contract that it indemnifies, even when the contracts are executed contemporaneously. 691 N.Y.S.2d 35, 40 (N.Y. App. Div. 1999). There, promissory notes guaranteed via bond by the plaintiff and indemnification agreements entered into by the plaintiff and defendant, each had forum selection clauses designating Pennsylvania and New York, respectively, as the appropriate forums for suits brought under the agreements. *Id.* at 37. The plaintiff then commenced suit under the indemnification agreements. *Id.* at 38. The court rejected the defendants' argument that the forum selection clause in the notes should control over the contrary provision in the indemnification agreements. *Id.* The court emphasized that "the plaintiff's involvement in the subject transaction [was] peripheral" and that the "[p]laintiff was merely the guarantor of payment" for the underlying notes. *Id.* at 40 (internal quotation omitted).

Here, unlike in *National Union*, the two agreements at issue do not have conflicting forum selection clauses because the guaranty does not have a forum selection clause. *See* Docket 6-2 at 2. Each agreement does have a different choice of law clause—the guaranty is to be decided under New York law, and the servicing agreement under South Dakota law. Docket 6-1 at 48; Docket 6-2 at 2. This, however, does not present the same conflicting result as two forum selection clauses. The parties may have merely meant for each part of the transaction to be decided under different governing law. Further, unlike the

10

plaintiff in *National Union*, Xerox Business Services executed the guaranty as the parent company of Xerox Card Services, and the same individual signed both agreements on behalf of the parties. Docket 6-1 at 52; Docket 6-2 at 3; Docket 1 ¶ 16. This suggests more than the "peripheral" involvement that the court in *National Union* found significant. *Nat'l Union Fire Ins. Co.*, 691 N.Y.S.2d at 40. And the guaranty is labeled "Parent Guaranty," recognizing that Xerox Business Services had a close relationship to Xerox Card Services. Docket 6-2 at 1. Finally, the *National Union* case was decided in 1999, and two appellate division cases decided more recently found that the forum selection clause in an underlying agreement controls in suits under a corresponding guaranty. *See Oak Rock Fin., LLC,* 50 N.Y.S.3d at 108 (decided in 2017); *Brax Capital Group, LLC*, 922 N.Y.S.2d at 44 (decided in 2011); *Nat'l Union Fire Ins. Co.*, 691 N.Y.S.2d at 35 (decided in 1999). Thus, to the extent these cases do present conflicting holdings, the court finds that the holdings of the more recent cases are determinative here.

Here, like in *Oak Rock Financial*, the parties executed two contracts closely in time and related to the same subject matter. Docket 1 ¶ 16. The parties intended for one contract to induce the other, and related parties signed both agreements. Docket 6-2 at 1, 3; Docket 6-1 at 52; Docket 1 ¶ 16. Thus, the court finds that under New York law, the "documents [were] executed at about the same time and covering the same subject matter [and] are to be interpreted together[.]" *Oak Rock Fin., LLC*, 50 N.Y.S.3d at 110 (internal

quotation omitted). The forum selection clause in the underlying servicing agreement applies to suits initiated under the guaranty.

### C.     Whether a Conflict Exists

" '[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a false conflict, and the Court should avoid the choice-of-law question.' " *Ronnoco Coffee, LLC v. Westfeldt Bros., Inc.*, 939 F.3d 914, 920 (8th Cir. 2019) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3rd Cir. 2006)); *see also* 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4506 (3d ed. 2019) ("[M]any federal courts have concluded that if the relevant states' laws do not conflict, a choice-of-law analysis is unnecessary and the court may apply the forum state's law.").

Here, as discussed above, the court finds that under both South Dakota and New York law, the forum selection clause in the servicing agreement applies to the guaranty. Because the laws in both jurisdictions would produce the same result, the court will avoid deciding the choice-of-law question. *Ronnoco*, 939 F.3d at 920. The court will next examine whether the forum selection clause is enforceable.

### II.    Whether the Action is Properly Dismissed under Rule 12(b)(3) or Transferred Under 28 U.S.C. § 1404(a)

Enforcement, or not, of a contractual forum selection clause is a federal court procedural matter governed by federal law. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009). Under federal law, "forum selection clauses are prima facie valid and are enforced unless they are

unjust or unreasonable or invalid." *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (internal quotation omitted). The party challenging the forum selection clause bears the "heavy burden of proof" to avoid its enforcement. *Id.* (internal quotation omitted).

MetaBank does not dispute the validity of the forum selection clause in the servicing agreement, but rather relies on its argument that the forum selection clause does not apply to the guaranty. *See* Docket 9. And while MetaBank argues that South Dakota is the most convenient forum for litigation, *see id.* at 5-7, when a party moves to transfer venue under a valid forum selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. D. Tex.*, 571 U.S. 49, 52 (2013). "[A] party seeking to avoid his promise must demonstrate that proceeding in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Servewell*, 439 F.3d at 790 (internal quotation omitted). MetaBank has not made such a showing. Thus, the court next turns to the appropriate enforcement of the clause.

Typically, the appropriate way to enforce a forum selection clause is through 28 U.S.C. 1404(a), not through a Rule 12(b)(3) motion to dismiss. *Atl. Marine*, 571 U.S. at 52 ("[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)[.]"). *Atlantic Marine* states that "the appropriate way to enforce a forum-selection clause pointing to a state or

13

foreign forum is through the doctrine of forum non conveniens." *Id.* at 60. But when the transferee forum is within the federal court system, "Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.*

Xerox Business Services argues that because the forum selection clause designates Texas as the chosen forum state, rather than a specific federal district in Texas, *Atlantic Marine* dictates that dismissal under the doctrine of forum non conveniens is appropriate. Docket 6 at 10. In support of this assertion, Xerox Business Services points to *Hisey v. Qualtek USA, LLC*, an unpublished Eleventh Circuit decision that found no error in a district court's decision to dismiss under forum non conveniens instead of to transfer a case when the forum selection clause designated the state of Pennsylvania as the appropriate forum. 753 F. App'x 698, 704 (11th Cir. 2018). But *Atlantic Marine* does not address cases where *either* a state or federal forum would be appropriate under the forum selection clause, as here. *See Atl. Marine*, 571 U.S. at 60.

The Eighth Circuit has not directly addressed whether a district court should dismiss or transfer a case when the agreed-upon forum may be either state or federal court, as here. In *In re Union Electric Company*, the Eighth Circuit, applying *Atlantic Marine*, denied a writ of prohibition and upheld a district court's transfer of jurisdiction to the Southern District of New York under § 1404(a) when the forum selection clause designated New York as the appropriate forum. 787 F.3d 903, 909-10 (8th Cir. 2015). The court finds this approach more consistent with the policies outlined in *Atlantic Marine* than the

14

approach in *Hisey*. *Atlantic Marine* notes that "federal courts invoke forum non conveniens in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." 571 U.S. at 60 (internal quotation and citation omitted).

Here, the parties' forum selection clause simply states that "[f]or actions brought by either party, the venue shall be in the State of Texas." Docket 6-1 at 48. The parties do not designate a specific state or federal court. Thus, based on the language of the contract, they consent to litigation venued in either state or federal court in Texas. The court finds that it is most appropriate to transfer to the district requested by Xerox Business Services, the Northern District of Texas, Dallas Division. Like in *In re Union Electric*, the court transfers the case to a federal district court identified by the moving party within the area specified in the parties' contract. 787 F.3d at 909-10

## CONCLUSION

The court finds that under the laws of either South Dakota or New York, the forum selection clause in the parties' servicing agreement applies to this suit under the guaranty. Thus, the court transfers the action to a venue allowed under the forum selection clause, the Northern District of Texas, Dallas Division. It is

ORDERED that Conduent Business Service's motion to transfer (Docket 5) is granted. This action is transferred to the Northern District of Texas, Dallas Division.

IT IS FURTHER ORDERED that MetaBank's motion to compel (Docket 16) is denied as moot.

Dated April 29, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE