UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| METABANK, d/b/a META PAYMENT SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:20-CV-1080-G |
| | ) | |
| CONDUENT BUSINESS SERVICES, LLC, f/k/a XEROX BUSINESS SERVICES, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff/counter defendant MetaBank, d/b/a Meta

Payment Systems ("MetaBank")'s motion for judgment on the pleadings, or, in the

alternative, motion to dismiss for failure to state a claim.  MetaBank's Motion for

Judgment on the Pleadings, or, in the Alternative, Dismissal for Failure to State a

Claim ("Motion") (docket entry 40).  For the reasons set forth herein, the motion is

granted in part and denied in part.

I. BACKGROUND

A. Factual Background

The defendant/counter claimant Conduent Business Services, LLC,

("Conduent") is a technology services company offering services in business processes

-1-

and operations.  Defendant's Answer to Plaintiff's Complaint and Defendant's

Original Counterclaims ("Counterclaim") (docket entry 38) at 7.  The

plaintiff/counter defendant MetaBank is a federally chartered savings bank.

Complaint (docket entry 1) at 1.  On April 7, 2016, Xerox Card Services, LLC

("XCS"), a wholly owned subsidiary of Conduent, and MetaBank executed a

servicing agreement whereby MetaBank agreed to act as the issuing bank for a

prepaid card program to be managed and serviced by XCS in exchange for monthly

fees according to a fee schedule.  *Id*. at 1-2.  The agreement includes the following

termination clause in Section 9.2(a)(iv):

> [A party may terminate the agreement] if there shall occur any change to
> or enactment of or change in interpretation or enforcement of any law or
> regulation which would have a material adverse effect upon such Party's
> ability to perform its obligation under this Agreement or such Party's
> costs/revenues with respect to the Program, provided, however, that in the
> event of such an event, the Parties shall use best efforts to find a mutually
> agreeable commercially reasonable solution to alleviate the material adverse
> effect.

Brief in Support of Motion to Dismiss or Transfer, Exhibit A at 34 (docket entry 6-1)
("Servicing Agreement").

In many states, entities that provide money transmission services like those

contemplated by the servicing agreement must obtain money transmitter licenses

("MTLs").  Counterclaim at 8.  Conduent alleges that when the Servicing Agreement

was executed, the parties mutually understood that Conduent would be required to

obtain MTLs in less than ten states.  *Id*.  Conduent further alleges that "[a]fter

-2-

executing the Servicing Agreement, the parties determined that MTLs would be required in significantly more states than originally understood . . . This change posed considerable additional costs and other requirements that were unanticipated by either party at the time they executed the Servicing Agreement." *Id*.

Conduent alleges that after determining compliance with the increased MTL requirements would undermine the purpose of the agreement, it exercised its purported power under Section 9.2(a)(iv) to terminate the agreement in July 2018. See *id*. at 9. Lastly, Conduent alleges that it mistakenly authorized continued payments under the agreement until February 2019 and that MetaBank has "improperly" retained those payments. See *id*.

B. <u>Procedural Background</u>

In August 2019, MetaBank brought this case in the District of South Dakota alleging breach of contract and declaratory judgment claims against Conduent for failing to make payments under the Servicing Agreement after February 2019. *See* Complaint. The case was transferred to this court from the South Dakota District Court under 28 U.S.C. § 1404(a) on April 29, 2020. Order Granting Defendant's Motion to Transfer Venue and Denying As Moot Plaintiff's Motion to Compel ("Transfer Order") (docket entry 22). Conduent answered the complaint and filed counterclaims for declaratory judgment, rescission, and unjust enrichment on June 12, 2020. Counterclaim. MetaBank filed the instant motion for judgment on the

pleadings, or, in the alternative, motion to dismiss Conduent's counterclaims on July

10, 2020.  Motion.  MetaBank seeks to have Conduent's declaratory judgment and

unjust enrichment claims, but not the rescission claim, dismissed.  *Id*. at 1.

Conduent filed a response on July 31, 2020.  Defendant's Response and Brief in

Opposition to Plaintiff's Partial Motion to Dismiss ("Response") (docket entry 43).

Metabank filed a reply on August 13, 2020.  MetaBank's Reply in Support of Rule

12 Motions ("Reply") (docket entry 44).  MetaBank's motion(s) are therefore fully

briefed and ripe for determination.

## II.  ANALYSIS

### A. Legal Standards

#### 1. *Rule 12(c) Motion for Judgment on the Pleadings*

"After the pleadings are closed–but early enough not to delay trial–a party may

move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  When ruling on such a

motion, the court must regard allegations of fact in the complaint as true.  See *Cash v.*

*Commissioner of Internal Revenue*, 580 F.2d 152, 154 (5th Cir. 1978).  The court may

enter judgment on the pleadings only if the material facts show that the movant is

entitled to prevail as a matter of law.  See *Greenberg v. General Mills Fun Group, Inc.*,

478 F.2d 254, 256 (5th Cir. 1973).  This standard is roughly equivalent to that

applied on a motion under Rule 12(b)(6) to dismiss for failure to state a claim.  *See*

5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 1367 (1990); see also *St. Paul Insurance Company of Bellaire, Texas v. AFIA Worldwide Insurance Company*, 937 F.2d 274, 279 (5th Cir. 1991).

### 2. *Rule 12(b)(6) Motion to Dismiss*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine

whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678.  The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible."  See *id.* at 679, 683.

B. Application

1. *Applicable Law*

The court must first determine what law to apply in this case.  When a case is

-6-

transferred under § 1404(a), the transferee court must apply the substantive law that the transferor court would have applied. See *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964); *Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 398 n.4 (5th Cir. 2016). This includes the choice of law rules the transferor court would follow. See *Sims*, 839 F.3d at 398. Federal courts apply the choice of law rules of the state in which the federal court sits. See *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). Therefore, South Dakota choice of law rules inform the court's inquiry into the applicable law.

South Dakota follows the Second Restatement of Conflict of Laws. See *Dunes Hospitality, L.L.C. v. Country Kitchen International, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001). Section 187 of the restatement outlines an approach to evaluating contractual choice of law provisions and generally favors applying the parties' chosen law. *Id*. The Servicing Agreement provides that South Dakota law governs the contract. Servicing Agreement at 48. The court will honor that choice and apply South Dakota law.[1]

### 2. *Count I: Declaratory Judgment*

The arguments over count one boil down to the interpretation of Section

---

[1]     The choice of law analysis is more complicated than simply honoring the parties' choice. However, the court has determined that if there are conflicting legal regimes, the analysis would come down to whether applying South Dakota contract law would violate fundamental South Dakota policy. That seems unlikely.

9.2(a)(iv) of the Servicing Agreement.  At this stage, the court must determine whether the phrase "or change in interpretation or enforcement of any law or regulation" plausibly contemplates a change in *the parties'* interpretation of any law or regulation.  MetaBank argues that dismissal under Rule 12(b)(6) is warranted because such a reading is implausible.  MetaBank's Brief in Support of Rule 12 Motions ("Brief") (docket entry 41) at 3-4; Reply at 1-3.  Conduent argues that is the best reading of subsection (iv) and argues that at worst, the language is ambiguous, making dismissal at this stage inappropriate.  Response at 4-5.

Conduent pleaded only the language of Section 9.2(a)(iv) and relies on that language alone to suggest that the clause is "capable of more than one meaning when viewed objectively . . ." and thus ambiguous.  *See* Response at 5 (quoting *LaMore Restaurant Group, LLC v. Akers*, 748 N.W.2d 756, 765 (S.D. 2008)).  Conduent argues that because the provision does not explicitly state *whose* interpretation would have to change and that nothing explicitly limits it to *governmental entities*, it is plausible to conclude that Section 9.2(a)(iv) embraces the *parties'* changed interpretation.  *Id*. at 4-5.  The court disagrees.

Even under deferential review, Conduent's reading stretches the language of Section 9.2(a)(iv) beyond what South Dakota law allows.  The court may not interpret "particular words and phrases in isolation."  *Tri-City Associates, LP v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014) (citing *Casey Ranch Limited*

*Partnership v. Casey*, 773 N.W.2d 816, 821 (S.D. 2009)). " Under the canon of *noscitur a sociis*, words take import from each other . . . [t]his maxim of interpretation is 'wisely applied where a word [or phrase] is capable of many meanings in order to avoid the giving of unintended breadth' to contract provisions." *Opperman v. Heritage Mutual Insurance Company*, 566 N.W.2d 487, 490 (S.D. 1997); see *Brookings Mall, Inc. v. Captain Ahab's, Limited*, 300 N.W.2d 259, 262 (S.D. 1980) (applying *noscitur a sociis* in contract interpretation); Restatement (Second) of Contracts § 202. In other words, context matters, a lot.

Section 9.2(a)(iv) contains four action terms that trigger the provision: change, enactment, interpretation, and enforcement. Servicing Agreement at 34. These terms are connected to the nouns "law or regulation." *Id*. Only government entities can change, enact, or enforce laws and regulations, by definition limiting three out of the four terms to government entities. It is therefore unremarkable that Section 9.2(a)(iv) does not explicitly limit them to government entities; doing so would have been redundant. South Dakota law directs courts to take the logical step and interpret the fourth term in a like manner. See *Opperman*, 566 N.W.2d at 490. Deploying *noscitur a sociis*, "interpretation" of laws or regulations–another action government entities do–should also apply only to government action. Thus, the alleged ambiguity evaporates when Section 9.2(a)(iv) is read in accordance with South Dakota rules of contract interpretation. Conduent pleaded no other facts nor

cited contradictory law that could plausibly point the court in a different direction.

Several other subsections within Section 9.2(a) actually specify when a party's actions trigger a provision.  *See* Servicing Agreement at 33-34.  In that context, if Conduent is correct, then subsection (iv) should specify that a party's interpretation of a law or regulation could trigger the provision.  As Conduent noted in its brief, subsection (iv) does not.  *See* Response at 4.  Again, context matters.

Finally, Conduent's reading likely creates an untenable result.  "[T]his Court is constrained from interpreting a contract literally if doing so would produce an absurd result."  *Nelson v. Schellpfeffer*, 656 N.W.2d 740, 743 (S.D. 2003).  The relevant language of Section 9.2 reads as follows: "A Party hereto shall have the right to terminate this agreement . . . if there shall occur any . . . change in interpretation . . . of any law or regulation . . . ."  Servicing Agreement at 33-34.  If "interpretation" means what Conduent alleges it does, then this section, read literally, would allow either party to unilaterally terminate the contract based on its own private interpretation of the law, independent of external occurrences.  It seems doubtful that MetaBank would bind itself so powerlessly to Conduent's subjective views, or *vice versa*.  See *Nelson*, 656 N.W.2d at 743-744 ("The Agreement is transformed into a mere demand note, callable at the whim of Nelson. This interpretation of the contract is not reasonable: it is absurd.").  Further, nothing in the Servicing Agreement requires the parties to agree on a re-interpretation, which could

-10-

theoretically cure the defect.  Without a route to cure an otherwise absurd result, the court will not read Section 9.2(a)(iv) to create one.

In a vacuum, the word "interpretation" can include a private actor's interpretation.  However, that is not the Rule 12(b)(6) standard, nor how contracts are interpreted under South Dakota law.  Conduent's allegations must "nudge[] [its] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 569.  Conduent has not crossed that line by pleading the Servicing Agreement language alone.  There may be other facts–substantiated by parol evidence, for example–that could support Conduent's claims.  See *John Morrell & Company v. Local Union 304A of United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 551 (8th Cir. 1990), *cert. denied*, 500 U.S. 905 (1991) ("Although extrinsic evidence may not be admitted to contradict the parties' intentions as expressed in the writing, it can be admitted to demonstrate that ambiguity exists."); Restatement (Second) of Contracts § 214.  Therefore, Conduent's counterclaim for declaratory judgment is dismissed without prejudice for failure to state a claim upon which relief can be granted.

### 3.  *Count III: Unjust Enrichment*

Even though Conduent's declaratory judgment claim is dismissed, the court must still evaluate the unjust enrichment claim.  MetaBank argues that because Conduent tied the unjust enrichment claim to its declaratory judgment claim and not the rescission claim, if the declaratory judgment claim falls then the unjust

enrichment claim must also fall.  *See* Reply at 3-4.  In other words, MetaBank wants the claim dismissed because the *legal* conclusions are no longer intact.  MetaBank cites no case law for this proposition.  At this stage, the court is scrutinizing the complaint for *factual* allegations that support a plausible claim and is discounting legal conclusions.  See *Ashcroft*, 556 U.S. at 679.

MetaBank has not challenged the rescission claim, so it is presumably well pleaded and survives this motion.  Under South Dakota law, restitution awards are mandatory companions to rescission orders.  *See* SOUTH DAKOTA CODIFIED LAWS § 53-11-5 ("The party rescinding a contract must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, *upon condition that such party shall do likewise*, unless the latter is unable or positively refuses to do so.") (emphasis added); *Whitson v. Lende*, 442 N.W.2d 267, 269-270 (S.D. 1989); *O'Connor v. King*, 479 N.W.2d 162, 165 (S.D. 1991) ("Upon rescission, [the party] must restore what they received and recover back what they paid under the contract.").  The rescission claim is presumably well pleaded, so the unjust enrichment claim now operates as a companion to the rescission claim, akin to the *Whitson* and *O'Connor* cases.  *Id*.  For that reason, the motion to dismiss the unjust enrichment claim is denied.

-12-

## III.  CONCLUSION

For the reasons stated above, MetaBank's Rule 12 motions are **GRANTED** in part and **DENIED** in part.  The motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED** as to the declaratory judgment claim, and that claim is **DISMISSED WITHOUT PREJUDICE**.[2]  The motions are **DENIED** as to the unjust enrichment claim.

**SO ORDERED.**

November 16, 2020.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**

---

[2]     The court denies the Rule 12(c) motion for judgment on the pleadings.